**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| DEBRA M. BALESTRA-LEIGH and STEPHEN M. BALESTRA,<br><br>    Plaintiffs,<br><br>vs.<br><br>JESSICA K. BALESTRA, formerly known as JESSICA K. ESLAVA-BARBIERI,<br><br>    Defendant. | 3:09-CV-551-ECR-RAM<br><br><br><br>**Order** |

Plaintiffs in this case are Debra M. Balestra-Leigh and Stephen M. Balestra. Defendant, Jessica K. Balestra ("Jessica"), is the widow of Plaintiffs' father and Plaintiffs' former step-mother. Plaintiffs assert six claims for relief: (1) "fraud/misrepresentation, false promise"; (2) "constructive fraud"; (3) "breach of contract"; (4) "quasi contract/equitable estoppel/waiver"; (5) "tortious interference with expectancy in inheritance"; and (6) "declaratory relief."

Now pending is Defendant's motion to dismiss (#4). Plaintiffs have opposed (#5) the motion, Defendants replied (#6) and Plaintiffs filed a supplemental opposition (#11). The motion is ripe, and we now rule on it.

## I. Factual and Procedural Background

Jessica entered into a prenuptial agreement ("the Agreement") with Stephen Balestra[1] on February 25, 2005, against the advice of her attorney. (Compl. ¶¶ 38-40 (#1).) Under the Agreement, Jessica promised to forego potential claims to Stephen Balestra's estate upon his death. (Id. ¶ 59.) Jessica married Stephen Balestra on March 9, 2005. (Id. ¶ 43.) Plaintiffs contend that both before and during the marriage, Jessica repeatedly "acknowledged to Stephen and his relatives" that she understood the that the Agreement prevented her from receiving any part of Stephen Balestra's estate in the event of his death. (Id. ¶ 45.) Stephen Balestra died on May 29, 2009. (Mot. to Dismiss at 2 (#4).) Before his marriage, Stephen Balestra had prepared a will leaving all of his assets to Plaintiffs. (Compl. ¶ 48. (#1).) In the ongoing probate proceeding in Nevada state court, Jessica now claims that Stephen Balestra's will should be revoked as to her intestate share. (Mot. to Dismiss at 8 (#4).) The basis for Jessica's claim is that the Agreement is invalid because she did not understand the terms of the agreement when she signed it. (Compl. ¶ 52. (#1).) Under Nev. Rev. Stat. § 133.110, "if a person marries after making a will and the spouse survives the maker, the will is revoked as to the spouse . . . ." NEV. REV. STAT. § 133.110. If the Agreement is found to be invalid, under Nev. Rev. Stat. § 133.110, Stephen

---

[1] "Stephen Balestra" is the name of one of the Plaintiffs in this matter and the name of that Plaintiff's father. The Plaintiff's father is not a party to this action, but he is nevertheless referred to extensively in this Order. This Order will refer to Plaintiffs' father as "Stephen Balestra" and will refer to Plaintiff Stephen Balestra, as "Stephen."

2

Balestra's will is revoked as to Jessica. See id.  Plaintiffs contend, inter alia, that Jessica entered into the Agreement in bad faith, and her claim against the estate of Stephen Balestra's estate constitutes fraud and breach of contract.

On September 21, 2009, Plaintiffs filed the complaint (#1) in the present lawsuit, invoking our diversity jurisdiction.  On October 10, 2009, Defendants filed the pending motion to dismiss (#4).  Plaintiffs opposed (#5) the motion, and Defendant replied (#6).  On December 30, 2009, we gave Plaintiffs fifteen days within which time to file a supplemental opposition to Defendant's motion to dismiss because Defendant raised new legal issues in her reply. (Minute Order (#10).)  On January 19, 2010, Plaintiffs filed the supplemental opposition (#11).

Concurrent with this litigation, there is an ongoing probate proceeding in Nevada state court.  That proceeding involves both Jessica's petition for revocation of Stephen Balestra's will ("the Petition Action")[2] and the general administration of Stephen Balestra's estate.  (See P.'s Opp. at 3-4 (#5).)  The basis of the Petition action is that the Agreement is unenforceable under Nevada law and thus Stephen Balestra's will is revoked as to Jessica's share.  (See id. ¶ 52; Mot. to Dismiss ¶¶ 5-8 (#4)).

---

[2] The parties characterize the state court proceedings as concerning two actions. Nevertheless, there is essentially one action — the probate proceeding. The Petition Action was initially filed in the same case as the probate proceeding. (P.'s Opp. at 4 (#5).) Stephen removed the Petition Action to federal court. The Petition Action has, however, been remanded. (Case No. 3:09-cv-00563, Mins. (#20).) Thus, both "actions" are now again part of the probate proceedings.

3

## II. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A

4

court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. Id. at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Analysis

Jessica contends that we should decline to exercise jurisdiction over this case or, in the alternative, dismiss Plaintiffs' claims. For the reasons stated below, we will exercise

5

jurisdiction over the case, but Plaintiff's claims will be dismissed for failure to state a claim upon which relief can be granted.

### A. Probate and Domestic Relations Exceptions

Jessica contends that we do not have jurisdiction over this case under the probate and domestic relations exceptions to diversity jurisdiction. We disagree.

"[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Marshall v. Marshall, 547 U.S. 293, 296 (2006). In this case, Plaintiffs invoke our diversity jurisdiction and assert claims for, inter alia, fraud and breach of contract. Resolution of these claims may require us to decide whether or not the Agreement was valid. That resolution would, of course, impact the probate court's disposition of Stephen Balestra's estate. Nevertheless, Plaintiffs' claim does not require us to dispose of property that is in the custody of the probate court, nor does it require us to probate or annul a will. "[A federal court] may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." Id. (quoting Markham v. Allen, 326 U.S. 490, 494 (1946)).

The domestic relations exception to federal diversity jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). It is not applicable here because no party seeks a divorce, alimony or child custody decree.

B. Abstention

Jessica argues we should decline to jurisdiction over this case under the so-called Colorado River[3] abstention doctrines. Under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), federal courts may in "exceptional circumstances" decline to exercise or postpone jurisdiction in deference to pending state proceedings. Id. at 813. Abstention is not appropriate unless the state and federal actions are "substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). In assessing whether Colorado River abstention is appropriate, federal courts should consider the following factors: (1) which court first assumed jurisdiction over the res in dispute; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) whether the state forum will adequately protect the interests of the parties; and (7) whether the parties have engaged in forum shopping. Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367-68 (9th Cir. 1990). The aforementioned factors are not a "mechanical checklist."

---

[3] Jessica initially argued that abstention was proper under the Younger abstention doctrine, but she abandoned this position in her reply in favor of abstention on Colorado River grounds. (D.'s Reply at 5 (#6).)

7

Id. at 1368. Rather, the decision whether to abstain in favor of parallel state-court litigation rests on a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Id. Moreover, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th Cir. 1993).

The first factor is inapplicable in this case. [P]robate in Nevada is in the nature of an 'in rem' proceeding." Bergeron v. Loeb, 675 P.2d 397, 400 (Nev. 1984). The Nevada state court has assumed jurisdiction over the "res" or Stephen Balestra's estate. The present case, however, is not an in rem proceeding; the basis of our jurisdiction over Defendants is personal jurisdiction. The second factor is also irrelevant. The parties concede that both forums are equally convenient.

The third factor counsels in favor of abstention. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . .'" Colo. River, 424 U.S. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910). Nevertheless, piecemeal litigation is a factor that can support a stay under the exceptional circumstances test. Travelers, 914 F.2d at 1370. Resolution of this case will likely requires us to decide the validity of the Agreement. That will in turn have some effect on the disposition of the assets of Stephen Balestra's estate.

The fourth factor likewise counsels in favor of abstention. The state court probate proceeding at issue preceded this lawsuit.

With respect to the fifth factor, this case involves only routine issues of state law, which the state district court is fully capable of deciding. Therefore, the fifth factor is neutral or weighs in favor of exercising jurisdiction. See id. (holding that "the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances")(internal quotation marks and citation omitted).

The sixth factor counsels against abstention. The state forum will not adequately protect the parties' interests. First, the parties to this action differ from the parties to the state court action: "The estate is the central party in the Petition Action, but is not included as a party in any capacity in this case." (P.'s Supp. Opp. at 11 (#11).) Second, the probate court would not provide an adequate forum for resolution of Plaintiffs claims, which involve allegations of fraud and breach of contract over which the probate court has no jurisdiction. See Bergeron v. Loeb, 675 P.2d 397, 400 (Nev. 1984)("[P]robate in Nevada is in the nature of an 'in rem' proceeding. In an action in rem, the court acquires jurisdiction over the estate and all persons for the purpose of determining their rights to any portion of the estate.")

With respect to the seventh factor, the parties dispute whether the Plaintiffs are engaged in forum shopping. "In the Colorado River context, [the Ninth] Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical

9

advantage from the application of federal court rules." Travelers, 914 F.2d at 1370. Jessica contends that Plaintiffs seek to avoid an adverse ruling in state court and gain a tactical advantage. (D.'s Reply at 7 (#6).) Defendant's assertion is conclusory; There are no facts alleged in the complaint or evidence in the record in support of the proposition that Plaintiffs are forum shopping. Therefore, we conclude this factor is neutral or counsels against abstention.

The Supreme Court has stated:

> that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under Colorado River to justify the surrender of that jurisdiction.

Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 (1983) (superceded by statute on other grounds). In light of this admonition and in light of the applicable heavily weighted balancing test described in Travelers, we find that the Colorado River factors weigh in favor of the exercise of jurisdiction. Although the possibility of piecemeal litigation is real, and though the state court probate proceeding preceded this action, there are no extraordinary circumstances justifying abstention. We have a strong interest in protecting parties' interests, and those interests would not be adequately protected in state court probate proceedings. Moreover, we have "substantial doubt" as to whether the concurrent probate proceedings can resolve Plaintiffs' claims against Jessica for common law fraud and breach of contract. See Intel Corp., 12 F.3d at 912; Bergeron, 675 P.2d at 400. Thus, we will neither stay

10

nor dismiss Plaintiffs' lawsuit on the basis of the <u>Colorado River</u> doctrine. We now turn to the merits of Plaintiffs' claims. We will examine each claim in turn.

### C. Fraud/Misrepresentation, False Promise

Plaintiffs' first claim for relief is fraud. Their theory is as follows: Jessica signed the Agreement "as part of her plan to: (1) entice [Stephen Balestra] to marry her; (2) allay any concerns which [Stephen Balestra] or Plaintiffs might harbor regarding her designs on [Stephen Balestra's] wealth; and (3) ultimately secure pecuniary gain for herself and her family." (Compl. ¶ 55.) Jessica allegedly also furthered her plan by making "oral statements to [Stephen Balestra] and Plaintiffs during the 'marriage' that she knew she would receive nothing from [Stephen Balestra's] estate upon his death." (Id. ¶ 57.) Plaintiffs contend that had they known of Jessica's plan they could have "easily used their influence with their father to secure a new will specifically disinheriting Defendant." (D.'s Supp. Opp. at 7 (#11).)

In order to succeed on a claim for fraud, a plaintiff must prove, by clear and convincing evidence, the following elements: (1) A false representation made by the defendant; (2) Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation; (3) Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) Plaintiff's justifiable reliance upon the misrepresentation; and (5) Damage to the plaintiff resulting from such reliance. <u>Bulbman, Inc. v. Nev. Bell</u>, 825 P.2d 588, 592 (Nev. 1992). Failure to fulfill a promise or perform in

the future can rise to a fraud claim, but only when the promisor had no intention to perform at the time the promise was made. Id.

Plaintiffs do not state a cognizable fraud claim. Plaintiffs argument is premised on the proposition that Jessica's legal challenge to the validity of the Agreement constitutes a failure to perform that Agreement. From that premise, Plaintiffs contend that Jessica entered into an agreement she never intended to perform in order to "lull" Plaintiffs "into inaction." (P.' Supp. Opp. at 7 (#11).)

Plaintiffs' theory is untenable. Challenging the validity of a promise or agreement in a court of law is not tantamount to failure to perform that promise or agreement. Moreover, Plaintiffs' argument that had Jessica not signed the Agreement they would have convinced their father to change his will, is pure speculation. The decision to make, change or revoke a will is entirely within a testator's discretion: "[E]very testamentary expression is impliedly subject to a reservation of right to change as circumstances dictate or as affection may from time to time direct . . . ." Adkins v. Oppio, 769 P.2d 62, 63 (Nev. 1989). Plaintiffs cannot base a legal claim on the presumption that they would have successfully convinced their father to change his will to explicitly disinherit his wife.

    D. Constructive Fraud

Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence. Long v. Towne, 639 P.2d 528, 529 (Nev. 1982). Constructive fraud is characterized by a breach of duty arising out of a fiduciary or

12

confidential relationship. <u>Id.</u> A confidential or fiduciary relationship exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. <u>Id.</u>

Plaintiffs allege that Jessica, as their step-mother, "is legally imputed to have a confidential relationship with Plaintiffs." (Compl. ¶ 66 (#1).) There is no Nevada authority on point, but a survey of case law from other jurisdictions reveals a near-unanimous consensus that no confidential relationship arises by operation of law between a step-child and a step-parent absent special circumstances. <u>See</u> <u>Stone v. Stone</u>, 94 N.E.2d 855, 861-62 (Ill. 1950); <u>Cox v. Parker</u>, 101 So. 657, 660 (Ala. 1924) ("The grantor was a widow, and the grantee occupied the relation of a stepson. This, without more, does not raise a presumption of confidential relations between them, such as the law implies from the relation of parent and child."). This is particularly true when the step-child or step-children at issue are adults. <u>See</u> <u>Cox</u>, 101 So. at 660 ("Where the son has reached manhood, gone out from the family roof, become his own master, and the father again marries, we cannot say as matter of law any presumption arises that the stepmother occupies a position of dominance over the stepson.") There are no allegations here that would support a finding of special circumstances giving rise to a confidential or fiduciary relationship between the parties. Plaintiffs' second claim will therefore be dismissed.

13

E. Breach of Contract

To succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages.  See Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement") (quoting Malone v. Univ. of Kan. Med. Ctr., 552 P.2d 885, 888 (Kan. 1976)).

Plaintiffs claim that Jessica breached the Agreement by "claiming a right to a substantial portion of Stephen's estate." (Compl. ¶ 78 (#1).)  Jessica's claims against the estate, however, are premised on the alleged invalidity of the Agreement: "These outrageous demands are all premised upon one ridiculous assertion, i.e., that the prenuptial contract was invalid because Defendant allegedly did not understand the contract at the time that she signed it."  (P.'s Opp. at 3 (#5).)  Plaintiffs' theory of relief is, in essence, that Jessica, by challenging the validity of the Agreement, breached the Agreement.  That theory is untenable: If indeed the Agreement was invalid, then Plaintiffs cannot establish the first element of a breach of contract claim.

Moreover, we doubt that challenging the validity of a contract could constitute breach of contract, at least in the circumstances of this case.  Plaintiffs seek to place Jessica in a sort of catch-22, whereby even if the agreement is not a valid contract, she may not bring a challenge to its validity without incurring liability for breach of contract.

14

F. Quasi-Contract/Equitable Estoppel/Waiver

Plaintiffs' fourth claim is titled "quasi-contract/equitable estoppel/waiver." (Compl. at 10 (#1).)

"The essential elements of quasi contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (Nev. 1997). In this case, Plaintiffs have not alleged that they conferred a benefit upon the Defendant. Therefore, Plaintiffs fail to state a claim under a quasi-contract theory.

"Equitable estoppel is an affirmative defense and must be affirmatively pleaded." Idaho Res., Inc. v. Freeport-McMoran Gold Co., 874 P.2d 742, 743 (Nev. 1994). It is likewise inapplicable to this action. Similarly, waiver does not appear to be an independent cause of action. Therefore, Plaintiffs' fourth claim will be dismissed.

G. Tortious Interference with Expectancy in Inheritance

Plaintiffs' fifth claim for relief is for tortious interference with expectancy in inheritance. This cause of action has not been recognized in Nevada. Nevertheless, even if Nevada did recognize the cause of action, Plaintiffs' claim would fail.

The Second Restatement of Torts defines this cause of action as follows: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an

15

inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." RESTATEMENT (SECOND) OF TORTS § 774B (1979). Liability is "limited to cases in which the actor has interfered with the inheritance or gift by means that are independently tortious in character." Id. cmt.c. We have already addressed the allegations pertaining to fraud in this case, and found that Defendant's actions, as alleged, were not fraudulent. Plaintiffs' fifth claim will therefore be dismissed.

### H. Declaratory Relief

Plaintiffs seek declaratory relief declaring "that the Agreement a valid and enforceable contract which, in accordance with its terms, eliminates [Jessica] from the ability to make a claim for assets from Stephen's estate." (Compl. ¶ 1-3 (#1).) The Agreement itself is not in the record and Plaintiffs do not allege facts which, if true, would support this claim for relief. This claim will therefore be dismissed.

### IV. Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when justice so requires." In general, amendment should be allowed with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)). If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amendment are present, leave to amend may properly be denied in the district court's discretion. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

16

In light of the liberal spirit of Rule 15(a), we will give Plaintiffs leave to amend. If the amended complaint is similarly deficient however, further leave to amend may be denied.

### V. Conclusion

The probate exception does not preclude us from exercising jurisdiction over this case because resolving this lawsuit does not require us to dispose of property that is in the custody of the probate court, nor does it require us to probate or annul a will. The domestic relations exception likewise does not preclude us from exercising jurisdiction because no party seeks a divorce, alimony or child custody decree. We also decline to abstain from exercising jurisdiction because the factors enunciated in Colorado River weigh in favor of the exercise of jurisdiction.

Plaintiffs fail to state a claim for fraud because Plaintiffs' theory of relief — that challenging the validity of a promise in a court of law is tantamount to breaking it — is untenable under the circumstances of this case. Plaintiff's constructive fraud claim fails because there are no allegations here that would support a finding of special circumstances giving rise to a confidential or fiduciary relationship between the parties. Plaintiff's breach of contract claim fails because it is based on the same untenable theory as that which underlies Plaintiffs' fraud claim. Plaintiffs' claim for "quasi-contract/equitable-estoppel/waiver likewise does not state a claim: Quasi-contract is inapplicable because Plaintiffs have not alleged that they conferred a benefit upon Defendant; Equitable estoppel is an affirmative defense and must be

17

affirmatively pled and; Waiver is not an independent cause of action.  Plaintiffs do not state a claim for tortious interference with expectancy in inheritance.  Nevada has not recognized this cause of action, but even if it did, Plaintiffs have not alleged facts sufficient to state a claim.  Finally, we cannot grant declaratory relief to Plaintiffs regarding the validity of the Agreement.  The Agreement is not in the record and Plaintiffs do not allege facts which, if true, support this claim for relief.

**IT IS, THEREFORE, HEREBY ORDERED THAT** Defendant's motion to dismiss (#4) is GRANTED on the following basis: We reject the argument that we should not exercise jurisdiction over this case, but nevertheless, Plaintiffs claims are dismissed for failure to state a claim.  Plaintiffs shall have 21 days within which to file an amended complaint.

DATED: July 30, 2010.

_Edward C. Reed._
UNITED STATES DISTRICT JUDGE