**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| DEBRA M. BALESTRA-LEIGH and STEPHEN M. BALESTRA, | ) ) ) | 3:09-CV-551-ECR-RAM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **Order** |
| JESSICA K. BALESTRA, formerly known as JESSICA K. ESLAVA-BARBIERI, | ) ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiffs in this case are Debra M. Balestra-Leigh and Stephen M. Balestra. Defendant, Jessica K. Balestra ("Jessica"), is the widow of Plaintiffs' father and Plaintiffs' former step-mother. Plaintiffs assert six claims for relief: (1) declaratory relief; (2) breach of contract; (3) tortious interference with expectancy in inheritance; (4) intentional interference with prospective economic advantage; (5) promissory and tortious estoppel; and (6) negligent misrepresentation.

Now pending is Defendant's motion to dismiss (#16) and "Motion to Confirm Defendant's Motion to Dismiss [Doc. #16] as Complying With NRS 41.660 or Alternatively Defendant's Motion to Dismiss Pursuant to NRS 41.660" ("motion to confirm") (#17). Plaintiffs have opposed (## 19 and 18) the motions, and Defendant replied (## 20 and 21). The motions are ripe, and we now rule on them.

Also pending are Plaintiffs' "motion to Strike [#20] Reply to Response" (#22), "motion  to Strike [21] Reply to Response" (#23) and "motion to Disqualify Mark Simons, Esq" (#24).  These motions are not yet fully briefed.  Nevertheless, the motions are moot in light of this Order and will be denied on that basis.

## I. Factual and Procedural Background

Jessica entered into a prenuptial agreement ("the Agreement")[1] with Stephen Balestra[2] on February 25, 2005, against the advice of her attorney.  (Am. Compl. ¶¶ 31-32 (#15).)  Under the Agreement, Jessica waived her "right of election to take action against [Stephen Balestra's] will" and her "right to declare a homestead in Stephen Balestra's separate property."  (The Agreement ¶ 6 (#15-1).) Jessica married Stephen Balestra on March 9, 2005.  (Am. Compl. ¶ 35 (#15).)  Plaintiffs contend that both before and during the marriage, Jessica repeatedly acknowledged to Stephen and his relatives that she understood the that the Agreement prevented her from making a claim to or receiving any part of Stephen Balestra's estate in the event of his death.  (Id. ¶ 36.)  Stephen Balestra died on May 29, 2009.  (Id. ¶ 36.)  Before his marriage, Stephen Balestra had prepared a will leaving all of his assets to

---

[1]  The Agreement (#15-1) is attached to the Amended Complaint (#15).

[2]  "Stephen Balestra" is the name of one of the Plaintiffs in this matter and the name of that Plaintiff's father.  The Plaintiff's father is not a party to this action, but he is nevertheless referred to extensively in this Order.  This Order will refer to Plaintiffs' father as "Stephen Balestra" and will refer to Plaintiff Stephen Balestra, as "Stephen."

2

1  Plaintiffs.  (Id. ¶ 86.)  In the ongoing probate proceeding in

2  Nevada state court, Jessica now claims that Stephen Balestra's will

3  should be revoked as to her intestate share and requests a monthly

4  allowance and to stay in the homestead.  (Id. ¶ 86.)  The basis for

5  Jessica's claims are that the Agreement is invalid because she did

6  not understand its terms when she signed it.  (Id. 44.)  Under

7  Nevada Revised Statutes § 133.110, "if a person marries after making

8  a will and the spouse survives the maker, the will is revoked as to

9  the spouse . . . ."  NEV. REV. STAT. § 133.110.  If the Agreement is

10 found to be invalid, under section 133.110, Stephen Balestra's will

11 is revoked as to Jessica.  See id.  Plaintiffs contend, inter alia,

12 that Jessica entered into the Agreement in bad faith, and her claim

13 against Stephen Balestra's estate constitutes tortious interference

14 with expectancy in inheritance and breach of contract.

15     On September 21, 2009, Plaintiffs filed the complaint (#1) in

16 the present lawsuit, invoking our diversity jurisdiction.  On

17 October 10, 2009, Defendant filed a motion to dismiss (#4).  On July

18 30, 2010, we dismissed Plaintiffs' lawsuit in its entirety and gave

19 Plaintiffs 21 days within which to file an amended complaint.

20     On August 20, 2010, Plaintiffs filed an amended complaint

21 (#15).  On August 31, 2010, Defendant filed a motion to dismiss

22 (#16).  On September 15, 2010, Defendant filed a motion to confirm

23 (#17).  On October 6, 2010, Plaintiffs filed a motion "to Strike

24 [20] Reply to Response" (#22) and a motion "to Strike [21] Reply to

25 Response" (#23).  On October 7, 2010, Plaintiffs filed a motion "to

26 Disqualify Mark Simons, Esq." (#24)

27

28                                    3

Concurrent with this litigation, there is an ongoing probate proceeding in Nevada state court.  That proceeding involves both Jessica's petition for revocation of Stephen Balestra's will ("the Petition Action") and the general administration of Stephen Balestra's estate.  (See D.'s Mot. to Dismiss at 4 (#16).)  The basis of the Petition action is that The Agreement is unenforceable under Nevada law and thus Stephen Balestra's will is revoked as to Jessica's share.  (Id. at 4-6.)

## II. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original).  Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly, "[c]onclusory allegations and unwarranted inferences are

4

1  insufficient to defeat a motion to dismiss." <u>In re Stac Elecs.</u>, 89

2  F.3d at 1403 (citation omitted).

3      Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is

4  normally limited to the complaint itself.  <u>See</u> <u>Lee v. City of L.A.</u>,

5  250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on

6  materials outside the pleadings in making its ruling, it must treat

7  the motion to dismiss as one for summary judgment and give the non-

8  moving party an opportunity to respond.  Fed. R. Civ. P. 12(d);

9  <u>see</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir. 2003).  "A

10 court may, however, consider certain materials — documents attached

11 to the complaint, documents incorporated by reference in the

12 complaint, or matters of judicial notice — without converting the

13 motion to dismiss into a motion for summary judgment." <u>Ritchie</u>, 342

14 F.3d at 908.

15     If documents are physically attached to the complaint, then a

16 court may consider them if their "authenticity is not contested" and

17 "the plaintiff's complaint necessarily relies on them." <u>Lee</u>, 250

18 F.3d at 688 (citation, internal quotations, and ellipsis omitted).

19 A court may also treat certain documents as incorporated by

20 reference into the plaintiff's complaint if the complaint "refers

21 extensively to the document or the document forms the basis of the

22 plaintiff's claim." <u>Ritchie</u>, 342 F.3d at 908.  Finally, if

23 adjudicative facts or matters of public record meet the requirements

24 of Fed. R. Evid. 201, a court may judicially notice them in deciding

25 a motion to dismiss.  <u>Id.</u> at 909; <u>see</u> Fed. R. Evid. 201(b) ("A

26 judicially noticed fact must be one not subject to reasonable

27 dispute in that it is either (1) generally known within the

28                                      5

1   territorial jurisdiction of the trial court or (2) capable of
2   accurate and ready determination by resort to sources whose accuracy
3   cannot reasonably be questioned.").

4
5                          **III. Analysis**

6        A. Nevada Revised Statutes § 41.660

7        On September 15, 2010, Jessica filed a motion to confirm (#17)
8   requesting that we confirm that her previously filed motion to
9   dismiss (#16) complied with Nevada's Anti-Strategic Lawsuit Against
10  Public Participation (anti-SLAPP) statute or, in the alternative,
11  that we consider the motion to confirm itself (#17) a "special
12  motion to dismiss" under the statute.

13       Nevada's Anti-SLAPP statute, Nevada Revised Statutes sections
14  41.635-41.670, provides a remedy for defendants faced with
15  "Strategic Lawsuits Against Public Participation."  "A person who
16  engages in good faith communication in furtherance of the right to
17  petition is immune from civil liability for claims based upon the
18  communication."  NEV. REV. STAT. § 41.650.  In relevant part, section
19  41.637 defines a "good faith communication in furtherance of the
20  right to petition" as any "[w]ritten or oral statement made in
21  direct connection with an issue under consideration by a
22  legislative, executive or judicial body, or any other official
23  proceeding authorized by law, which is truthful or is made without
24  knowledge of its falsehood."  NEV. REV. STAT. § 41.637(3).

25            a. Timeliness

26       "Anti-SLAPP statutes are designed to allow the early dismissal
27  of meritless lawsuits aimed at chilling expression through costly,

28                              6

time-consuming litigation." <u>Gardner v. Martino</u>, 563 F.3d 981, 986 (9th Cir. 2009).  "A special motion to dismiss must be filed within 60 days after service of the complaint, which period may be extended by the court for good cause shown." NEV. REV. STAT. § 41.660(2).  It is unclear from this language whether the sixty days runs from the service of the original complaint or from the service of the most recent amended complaint.  There does not appear to be any authority addressing this issue.  Thus, in the absence of statutory language indicating that the sixty day period runs from the filing of the "original complaint," we construe the statute to mean that the sixty day period runs from the filing of the most recent amended complaint.  In this case, both the motion to dismiss and motion to confirm were filed within sixty days after the amended complaint was filed.  Accordingly, regardless of which motion we consider the "special motion," the motion is timely.

        b. The Merits

    "[D]efendants sued in federal court can bring an anti-SLAPP motion to strike state law claims . . . ." <u>Verizon Del., Inc. v. Covad Comm. Co.</u>, 377 F.3d 1081, 1091 (9th Cir. 2004) (citations omitted).  Under Nevada Revised Statutes section 41.669, if a person is sued based upon good faith communications in furtherance of the right to petition, the person against whom the action is brought may file a special motion to dismiss.  The court is to treat the special motion to dismiss as a motion for summary judgment, and the court must stay discovery pending a ruling on the motion. NEV. REV. STAT. § 41.660(3).  Pursuant to Nevada Revised Statutes sections 41.660(3)-(4), the district court shall treat the special motion to

7

1  dismiss as a motion for summary judgment, and its granting the
2  motion is an adjudication upon the merits.

3      Since the special motion to dismiss is procedurally treated as
4  a summary judgment, summary judgment standards apply.  See John v.
5  Douglas County School Dist., 219 P.3d 1276, 1281 (Nev. 2009)
6  (applying Nevada Rules of Civil Procedure regarding summary
7  judgment).  The moving party bears the burden of informing the court
8  of the basis for its motion, together with evidence demonstrating
9  the absence of any genuine issue of material fact.  Celotex Corp. v.
10 Catrett, 477 U.S. 317, 323 (1986).  The moving party must thus
11 present sufficient evidence to make a threshold showing that the
12 lawsuit is based on "good faith communication in furtherance of the
13 right to petition" the government.  NEV. REV. STAT. § 41.660(1); see
14 Globetrotter Software v. Elan Computer Group, 63 F. Supp. 2d 1127,
15 1129 (N.D. Cal. 1999) (noting that "[a] defendant filing an
16 anti-SLAPP motion must make an initial prima facie showing that the
17 plaintiff's suit arises from an act in furtherance of the
18 defendant's rights of petition or free speech").

19     In this case, Jessica provides no admissible evidence in
20 support of her prima facie case.  Thus, there is no evidence that
21 Jessica's statements made in connection with her claims against
22 Stephen Balestra's estate were "truthful or [were] made without
23 knowledge of [their] falsehood."  See NEV. REV. STAT. § 41.637(3).
24 Jessica's "special motion" will be denied on that basis.  See Jarrow
25 Formulas, Inc. v. LaMarche, 3 Cal. Rptr. 3d 636, 646 n.10 (Cal.
26 2003) ("[t]hough the court does not weigh the credibility or
27 comparative probative strength of competing evidence, it should

28                                  8

grant the [anti-SLAPP] motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.")(internal quotation marks and citation omitted).  Jessica's motion to dismiss will therefore be denied to the extent it purports to be a "special motion" and Jessica's motion to confirm will be denied.

B. Motion to Dismiss

Jessica seeks dismissal of Plaintiffs' lawsuit in its entirety. She contends that Plaintiffs have failed to cure the deficiencies we noted in our Order (#14) dismissing Plaintiffs' original complaint (#1).  Additionally, Jessica argues that because the conduct at the heart of this lawsuit is her good faith communication in furtherance of her right to petition she is immune from liability under Nevada's common law and statutory litigation privilege.  Finally, Jessica reasserts her position that we do not have subject matter jurisdiction to hear this lawsuit under the probate exception.

We have addressed the issue of subject matter jurisdiction extensively in our previous Order (#14) and decided that we do have subject matter jurisdiction.  We will not revisit that issue again. Moreover, we need not address the issue of immunity because, as discussed below, Plaintiffs' lawsuit will be dismissed for failure to state a claim.  We will now examine each claim in turn with the exception that Plaintiffs' first claim for declaratory relief will be examined last.

1                    a. Breach of Contract

2        Plaintiffs' second claim for relief alleges a breach of

3   contract.  A nearly identical claim for breach of contract was

4   analyzed and dismissed by us in our previous Order (#14).

5   Plaintiffs contend that they have cured the deficiencies we noted in

6   our Order (#14).  We disagree.

7        In our previous Order (#14), we stated:

8        Plaintiffs claim that Jessica breached the Agreement by
         "claiming a right to a substantial portion of Stephen's
9        estate." (Compl. ¶ 78 (#1).)  Jessica's claims against the
         estate, however, are premised on the alleged invalidity of
10       the Agreement: "These outrageous demands are all premised
         upon one ridiculous assertion, i.e., that the prenuptial
11       contract was invalid because Defendant allegedly did not
         understand the contract at the time that she signed it."
12       (P.'s Opp. at 3 (#5).)  Plaintiffs' theory of relief is,
         in essence, that Jessica, by challenging the validity of
13       the Agreement, breached the Agreement.  That theory is
         untenable:  If indeed the Agreement was invalid, then
14       Plaintiffs cannot establish the first element of a breach
         of contract claim.

15

16   (Order at 4 (#14).)

17       Plaintiffs argue that, in their amended complaint, they are no

18   longer contending that Jessica breached the Agreement by questioning

19   its validity.  Indeed, Plaintiffs assert that Jessica is "free to

20   seek a declaration from this Court regarding the Agreement's

21   validity."  (P.s' Opp. at 12 (#19).)  Instead, Plaintiffs contend

22   that the heart of their breach of contract claim is as follows:

23   "Jessica promised not to make any claims against Stephen's property,

24   promised not to try to homestead his residence, and promised not to

25   make any claims against his estate.  Yet, as soon as Stephen died,

26   Jessica immediately began demanding a payoff."  (Id.)  We reject the

27   distinction Plaintiffs attempt to draw.  It is undisputed that the

28                                    10

very premise of Jessica's claims against the estate is that the Agreement itself is invalid.  Jessica is free, as Plaintiffs concede, to test the validity of the Agreement.  We disagree with Plaintiffs' contention that Jessica is restricted to an action for declaratory relief as her sole vehicle for doing so.  It defies logic that Jessica should have to file an independent action in another court in order to test the validity of the Agreement when the result of a successful challenge would be the probate court's revocation of the will as to her intestate share.  We note that we have discovered nothing in The Agreement indicating that Jessica is precluded from challenging the Agreement's validity.  Nor can we find any authority suggesting that such a broad covenant not to sue would pass muster.  Plaintiffs' claim thus fails and will be dismissed.

> b. Tortious Interference with Expectancy in Inheritance

Plaintiffs' third claim for relief is for tortious interference with expectancy in inheritance.  This cause of action has not been recognized in Nevada.  Nevertheless, even if Nevada did recognize the cause of action, Plaintiffs' claim would fail.

The Second Restatement of Torts defines this cause of action as follows: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Restatement (Second) of Torts § 774B (1979).  Liability is "limited to cases in which the actor has interfered with the inheritance or

11

1  gift by means that are independently tortious in character."  Id.

2  cmt.c.

3      We previously dismissed this claim and found that Plaintiffs

4  had not alleged facts constituting fraud, which Plaintiffs claimed

5  was the underlying tort.  Plaintiffs now repackage this claim and

6  allege that the underlying tort is breach of Jessica's fiduciary

7  duty to Stephen Balestra.  The heart of this claim, like the rest of

8  Plaintiffs' claims, is that Jessica's act of making claims against

9  the estate of Stephen Balestra in the ongoing probate proceedings

10 based on the alleged invalidity of the Agreement constitutes a

11 legally cognizable wrong in light of her alleged representations

12 that she understood the terms of the Agreement and would make no

13 claim against Stephen Balestra's estate.  We reject Plaintiffs'

14 theory.  We can find no authority from any jurisdiction — state or

15 federal — where the conduct underlying this tort bears any

16 resemblance to conduct alleged by Plaintiffs.

17     Regardless, Plaintiffs' claim also fails on other, more

18 fundamental, grounds.  Plaintiffs allege that they have suffered

19 damages as a result of Jessica's allegedly tortious interference

20 with their expectancy in inheritance.  Those damages allegedly

21 include "loss of income and use of the Reno home which Stephen

22 Balestra left to them, significant expenses relating to said home,

23 attorneys' fees and costs relating to this litigation . . . ." (Am.

24 Compl. ¶ 50 (#15).)  Nevertheless, Plaintiffs do not allege that

25 Jessica's behavior has actually prevented them from receiving an

26 inheritance or gift.  Indeed, Stephen Balestra's estate has

27 apparently rejected Jessica's claims.  (Am. Compl. ¶ 43 (#15).)

28                              12

Moreover, it appears that the probate proceedings are ongoing and that the probate court has yet to rule on the issue of whether Stephen Balestra's will is revoked as to Jessica's intestate share. We have not discovered any authority recognizing a claim for tortious interference with expectancy in inheritance in circumstances such as these where the testator devised his assets in a manner consistent with the Plaintiffs' wishes but failed to effectively insulate his testamentary expression from legal challenge.  Plaintiffs' third claim will therefore be dismissed.

c. Intentional Interference with Prospective Economic Advantage

Plaintiffs' fourth claim is intentional interference with prospective economic advantage.  A cause of action for interference with prospective economic advantage requires the following: "(1) a prospective contractual relationship between the plaintiff and third party; (2) knowledge by the defendant of prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct."  Wichinsky v. Mosa, 847 P.2d 727, 729-30 (Nev. 1993) (citing Leavitt v. Leisure Sports, Inc., 734 P.2d 1221, 1221 (Nev. 1987)).  The allegations in the amended complaint do not support a claim for intentional interference with prospective economic advantage.  Plaintiffs' claim will therefore be dismissed.

d. Promissory and Tortious Estoppel

Nevada has not recognized a claim for promissory estoppel. Under California law, "the elements of promissory estoppel are: (1)

13

1  a clear promise, (2) reliance, (3) substantial detriment, and (4)
2  damages measured by the extent of the obligation assumed and not
3  performed."  <u>Poway Royal Mobilehome Owners Assn. v. City of Poway</u>,
4  58 Cal. Rptr. 3d 153 (Cal. App. 4th Dist. 2007)(citations omitted).
5  "Promissory estoppel is a doctrine which employs equitable
6  principles to satisfy the requirement that consideration must be
7  given in exchange for the promise sought to be enforced."  <u>Id.</u>
8  (internal quotation marks and citation omitted).  The purpose of
9  Promissory Estoppel, under certain circumstances, is to make
10 promises binding although consideration is lacking.  <u>Youngman v.</u>
11 <u>Nevada Irrigation District</u>, 74 Cal. Rptr. 398, 404 (Cal. 1969).

12     Even if Nevada did recognize a claim for relief in tort for
13 promissory estoppel, Plaintiffs' claim fails. Plaintiffs allege that
14 "Jessica made multiple representations to both Stephen Balestra and
15 his relatives that she signed the Prenuptial agreement knowing it
16 would prevent her from making a claim to, or receiving any part of,
17 Stephen Balestra's estate, and that she understood and accepted
18 these facts."  (Am. Compl. ¶ 36 (#15).)  They allege that had
19 Jessica "timely notified" them of her alleged understanding they
20 could have convinced their father to change his will, sought a
21 judicial determination that the Agreement was valid or failed suit
22 for anticipatory repudiation.  (<u>Id.</u> ¶ 39.)

23     In this case, Jessica's alleged representations do not
24 constitute a clear promise that we could enforce.  Plaintiffs do not
25 allege that Jessica promised in writing or otherwise not to
26 challenge the Agreement's validity.  Jessica's alleged statements
27 may ultimately be relevant to the strength of her claim against

28                              14

Stephen Balestra's estate, but they do not constitute the type of promise that would be actionable under the theory of promissory estoppel. Moreover, Plaintiffs' claim suffers from the same fundamental deficiencies noted throughout this order. Plaintiffs' fifth claim will be dismissed.

### e. Negligent Misrepresentation

Plaintiffs' sixth claim alleges negligent misrepresentation. To succeed on a negligent misrepresentation claim, plaintiffs must show (1) a false representation, (2) in the course of the defendant's business, (3) for the guidance of others in their business transactions, (4) that plaintiff justifiably relies on, (5) resulting in pecuniary loss, (6) and that the defendant failed to exercise reasonable care in obtaining or communicating the information. <u>Barmettler v. Reno Air, Inc.</u>, 956 P.2d 1382, 1387 (Nev. 1998).

Plaintiffs do not allege facts that could support a claim for negligent misrepresentation. Even if we were to consider Jessica's marriage to her deceased husband a "business," there is no support for the proposition that she made any representations, false or otherwise, for the guidance of others in their business transactions. Plaintiffs' sixth claim will therefore be dismissed.

### f. Declaratory Relief

Plaintiffs first claim for relief seeks a declaratory judgment regarding the validity of the Agreement. The district court has discretion to determine when to entertain an action under the Declaratory Judgment Act. <u>Wilton v. Steven Falls Co.</u>, 515 U.S. 277, 282 (1995). Even if the suit is constitutionally and statutorily

15

1  allowed, the district court has the discretion to determine whether
2  the action is appropriate. Gov't Employees Ins. Co. v. Dizol, 133
3  F.3d 1220, 1223 (9th Cir. 1998). However, this discretion is not
4  unfettered. Id. In determining whether the action is appropriate,
5  district courts look to the factors in Brillhart v. Excess Insurance
6  Co. of America, 316 U.S. 491 (1942). Those factors, which are not
7  intended to be exhaustive, include the following: 1) avoiding
8  needless determination of state law issues; 2) discouraging
9  litigants from filing declaratory actions as a means of forum
10 shopping; and 3) avoiding duplicative litigation. Gov't Employees
11 Ins. Co., 133 F.3d at 1225.

12      Nevertheless, "when other claims are joined with an action for
13 declaratory relief (e.g., bad faith, breach of contract, breach of
14 fiduciary duty, rescission, or claims for other monetary relief),
15 the district court should not, as a general rule, remand or decline
16 to entertain the claim for declaratory relief." Snodgrass v.
17 Provident Life and Acc. Ins. Co., 147 F.3d 1163, 1167 (9th Cir.
18 1998). In that case, "the appropriate inquiry for a district court
19 in a Declaratory Judgment Act case is to determine whether there are
20 claims in the case that exist independent of any request for purely
21 declaratory relief, that is, claims that would continue to exist if
22 the request for a declaration simply dropped from the case." Id. at
23 1167-68.

24      We have dismissed all other claims in this case except for
25 Plaintiffs' request for declaratory relief. Therefore, there are no
26 longer other claims that exist "independent" of Plaintiffs' request
27 for "purely declaratory relief." See id. Thus, the Brillhart

28                              16

factors control our decision with respect to whether to entertain a claim for declaratory relief.  In this case, the <u>Brillhart</u> factors all militate in favor of declining to entertain an action under the Declaratory Judgment Act.  Determining the validity of the prenuptial agreement requires us to make determinations regarding Nevada contract law.  Moreover, there is an ongoing probate proceeding in which the validity of the prenuptial agreement will necessarily be decided.  Therefore, entertaining an action under the Declaratory Judgment Act would encourage forum shopping.  Finally, in light of the ongoing probate proceedings, refusing to entertain the action would avoid duplicative litigation.  Therefore, Plaintiffs' first claim will be dismissed.

### IV. Other Motions

Plaintiffs have filed three other motions in this case.  Two (## 22 and 23) request that we strike Defendant's reply briefs (## 20 and 21) because the replies were each filed one day after the deadline for reply briefs.  Plaintiffs' third motion (#24) requests that we disqualify Mark Simons, Defendant's attorney, in light of an alleged conflict of interest.

Plaintiffs do not have a strong argument with respect to their requests to strike.  They present neither argument nor evidence indicating they suffered any prejudice due to Defendant's delay.  Moreover, the delay at issue is negligible.  Defendant's reply briefs were one day late.  Regardless, Plaintiffs' lawsuit would be dismissed irrespective of whether we consider the arguments put forth in Defendant's reply brief.  Thus, Plaintiffs' motions to

strike are moot and will be denied on that basis.  Finally,
Plaintiffs' motion to disqualify Mark Simons (#24) is moot in light
of our dismissal of this lawsuit.

### V. Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when
justice so requires."  In general, amendment should be allowed with
"extreme liberality."  Owens v. Kaiser Found. Health Plan, Inc., 244
F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission
Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)).  If factors
such as undue delay, bad faith, dilatory motive, undue prejudice or
futility of amendment are present, leave to amend may properly be
denied in the district court's discretion.  Eminence Capital, LLC v.
Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

In this case, Plaintiffs have had an opportunity to amend their
complaint.  The amended complaint, like the original complaint,
fails to state a claim.  We thus conclude that further leave to
amend would be futile.

### VI. Conclusion

Jessica's motion to dismiss and motion to confirm are timely to
the extent they purport to be "special motions" to dismiss under
Nevada's anti-SLAPP statute.  Nevertheless, Jessica provides no
admissible evidence in support of her prima facie case.  Therefore,
Jessica's motion to dismiss will be dismissed to the extent it
purports to be a "special motion" and Jessica's motion to confirm
will be denied.

18

1    Plaintiffs' second claim for breach of contract fails because
2  Plaintiffs do not allege facts sufficient to state claim for breach
3  of contract.   Plaintiffs' third claim for relief alleging tortious
4  interference with expectancy in inheritance likewise fails.   This
5  claim for relief has not been recognized in Nevada.   Nevertheless,
6  even if Nevada did recognize the claim, Plaintiffs' claim would not
7  pass muster because it is based on an untenable theory.   Plaintiffs'
8  fourth claim for intentional interference with prospective economic
9  advantage likewise does not survive the present motion to dismiss
10 because the allegations in the amended complaint do not support the
11 claim.   Plaintiffs' fifth claim for promissory and tortious estoppel
12 will be dismissed because Jessica's alleged representations do not
13 constitute a clear promise that we could enforce.   The allegations
14 in the amended complaint do not support Plaintiffs' sixth claim for
15 negligent misrepresentation and the claim will be dismissed on that
16 basis.   Finally, Plaintiffs' first claim for declaratory relief will
17 likewise be dismissed.   We decline to exercise discretion to
18 entertain this claim in light of the circumstance that the <u>Brillhart</u>
19 factors all militate in favor of declining to entertain an action
20 under the Declaratory Judgment Act.

21    Plaintiffs have filed three other motions in this case.   Two
22 (## 22 and 23) request that we strike Defendant's reply briefs (##
23 20, 21) because the replies were each filed one day after the
24 deadline for reply briefs.   Plaintiffs' third motion (#24) requests
25 that we disqualify Mark Simons, Defendant's attorney, in light of an
26 alleged conflict of interest.   Plaintiffs' lawsuit would be
27 dismissed irrespective of whether we consider the arguments put
28                                  19

forth in Defendant's reply brief.  Therefore, Plaintiffs' motions to strike Defendant's reply briefs (## 22, 23) are moot and will be denied on that basis.  Similarly, Plaintiffs' motion requesting disqualification of Defendant's lawyer is moot in light of this order dismissing Plaintiffs' lawsuit in its entirety.

We will not give Plaintiffs leave to further amend their complaint because we conclude that further leave would be futile.

**IT IS, THEREFORE, HEREBY ORDERED THAT** Defendant's motion to dismiss (#16) is **GRANTED** in part and **DENIED** in part on the following basis: Defendant's motion is denied to the extent it purports to be a "special motion to dismiss" under Nevada Revised Statutes § 41.660.  The motion is granted in all other respects.

**IT IS HEREBY FURTHER ORDERED THAT** Defendant'S "Motion to Confirm Defendant's Motion to Dismiss [Doc. #16] as Complying With NRS 41.660 or Alternatively Defendant's Motion to Dismiss Pursuant to NRS 41.660" (#17) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED THAT** Plaintiffs' "motion to Strike [#20] Reply to Response" (#22) is **DENIED** as moot.

**IT IS HEREBY FURTHER ORDERED THAT** Plaintiffs' "motion  to Strike [21] Reply to Response" (#23) is **DENIED** as moot.

1    **IT IS HEREBY FURTHER ORDERED THAT** Plaintiffs' "motion to

2  Disqualify Mark Simons, Esq" (#24) is **DENIED** as moot.

3

4    The Clerk shall enter judgment accordingly.

5

6  DATED: October 18, 2010.

7

8                                         UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    21